# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

|  | ) |  |
|---|---|---|
| **KIMBERLY LYNN HYDEN**, | ) | Decatur County Chancery Court |
|  | ) | No. 2285 |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9611-CH-00273 |
|  | ) |  |
| **JOHN CARL HYDEN**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

**FILED**

**September 25, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Chancery Court of Decatur County at Decaturville.
**Honorable Walton West, Chancellor**

**Carthel L. Smith, Jr.**, Lexington, Tennessee
Attorney for Plaintiff/Appellant.

**K. Don Bishop**, SPRAGINS, BARNETT, COBB & BUTLER, Jackson, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**INMAN, Sr. J.**: (Concurs)

This appeal involves a petition to modify child support filed by the appellant, Kimberly Lynn Hyden ("Mother") against the appellee, John Carl Hyden ("Father"). After a hearing, the chancellor entered a final judgment increasing Father's monthly child support obligation, for benefit of the parties' three minor children, from $300 to $500 based upon the trial court's computation of a gross monthly income of $1,500.[1] Mother has appealed, contending that the trial court failed to consider all relevant factors in determining Father's income, including his willful and voluntary underemployment, and that the trial court should have imputed a minimum annual income of $25,761 based upon provisions of the child support guidelines. For the reasons set forth below, we affirm and remand.

The parties were divorced by final decree entered in September 1993. The decree set Father's child support at $300 per month based on the fact that he was attending college and only working part-time. At the May 1996 hearing on this matter, Mother testified that the costs for caring for the parties' three children, ages 9, 7 and 6 at the time, had increased 30 to 40 percent. These costs include $130 per week for child care; $285 per month for their health insurance; $60 per month for life insurance; $45 per week for school activities and expenses; and $350 per month for the children's clothing. There are also additional expenses for the medical care of the parties' youngest child, diagnosed with attention deficit disorder, in the amount of $115-$165 per month. It has been recommended that this child undergo counseling for the disability which, according to Mother, will cost approximately $225 per month. Mother stated that she receives financial assistance from her present husband regarding the children's care. She is self-employed, but stated that her business, "We Care Home Services," which she described as a "commercial and medical company," was "brand new" and currently operating at a loss.

Mother testified that when the parties first married, Father was in the trucking business. Shortly thereafter, he made the decision to continue his education to become an ordained minister, with Mother's encouragement. They moved to Parsons where Father served as pastor of a local church. Father enrolled at Bethel College in August 1992. Mother worked and also attended college. At the time of their divorce, Father remained a student at Bethel College. He graduated in

---

[1]The Tennessee Child Support Guidelines provide for a child support award of $501, for three children, where the obligor's gross monthly income is $1,500. See appendix.

May 1995 with a Bachelor of Arts degree. He then entered the Memphis Theological Seminary in the fall of that year as a full-time student.

Father testified that he has remarried and that his present wife, who has custody of three minor children, primarily supports him. He makes no routine financial contribution to his present household. The money he earns is subject to disposal as he sees fit.

Father stated that he must earn 21 credit hours to fulfill his requirements in the seminary, which he hopes to accomplish in three years. He explained that 75% of his school tuition is paid through a ministerial scholarship. He is also given an allowance for books. He attends classes two days a week, six hours a day. He was "stative supply" at two area churches until August 1995 when he resigned those positions to seek a full-time student pastor position. His attempts to obtain such employment have been unsuccessful. He stated that during the past year, he sought employment in this capacity at approximately 30 different area churches where the job interview mainly took the form of a trial sermon. He conducted trial sermons at various churches every week but one during the year and was compensated for each sermon, on average, $125. Father stated that it is possible to earn $750 to $1,000 per month as a student pastor. He explained, however, that within his denomination there are no established guidelines for pay and that remuneration depends upon the size and viability of the church. Father was not ministering anywhere at the time of trial. He said that he had also "sought employment at at least 30 or 40 different places in various areas," but without success

Father testified to two "summer jobs" he presently holds: a cargo handler for Federal Express, earning $6.98 per hour at 17-1/2 hours per week and a truck driver for Ozark Motor Lines, earning $9.75 an hour for 10 hours per week. Father intends to remain a full-time student in the seminary (attending fall and spring semesters), but stated that he would continue his position at Federal Express on a part-time basis if given the opportunity.

Father's federal income tax returns for the years 1993-94 reflect annual earnings of $9,979 and $11,981, respectively. He stated that he has outstanding student loans in the amount of $12,000 and has also received financial assistance from his family. In January 1996, Father filed

Chapter 7 bankruptcy. His petition listed his net monthly income at $541.67 with assets of $2,700 and liabilities totaling approximately $42,000.[2]

Based upon the foregoing evidence, the trial court ruled from the bench as follows:

> [T]he Court's of the opinion that the children ought to come first, as far as parents are concerned and when it comes to choices in life I'm of the opinion that we just simply have to put our children first. Above education, above recreation, above just about anything else I can think of.
>
> And so, while I respect someone who seeks to enhance their education . . . . If it conflicts with supporting the children I believe the children need to take priority.
>
> The evidence in this case reflects that [Father], at least based on his present employment should be able to earn approximately $8.50 an hour on average. He should be able to have a gross income approximately $1,500.00 per month. Your child support for three children will be set at $500.00 per month.
>
> . . . .
>
> . . . I . . . computed that I think he has the capability of earning $8.50 an hour in my opinion times 40 is $340.00 per week times 52 is $17,680.00 a year divided by 12. I've rounded it off to $1,500.00 per month.
>
> . . . .
>
> . . . that's the method I used.

We perceive the sole issue on appeal as whether the trial court erred in its holding. Mother asserts that the trial court erroneously based its decision on Father's average hourly rate regarding his present part-time employment positions and failed to take into consideration his college degree, earning capacity or previous work experience. She insists that the trial court should have imputed to Father the minimum annual income of $25,761 which she argues is required under the child support guidelines in instances of intentional unemployment or underemployment.

As to the monetary amount suggested, Mother apparently refers to Tenn. Comp. R. & Regs. title 1240, ch. 2-4-.03(3)(e) which states:

---

[2]We note somewhat curiously that Appellee's petition, in listing his monthly expenditures, does not include any amount for child support.

> When establishing an initial order and the obligor fails to produce evidence of income (such as tax returns for prior years, check stubs, or other information for determining current ability to support or ability to support in prior years), and the court has no other reliable evidence of the obligor's income or income potential, gross income for the current and prior years should be determined by imputing annual income of $25,761.

We find this section of the child support guidelines inapplicable here as it plainly refers to those cases "establishing an initial order" of child support and those instances where the obligor has failed to show any evidence of income, rendering the trial court without any reliable evidence regarding income or income potential. It is only under these circumstances that an annual income in the amount urged by Mother shall be imputed. Here, the initial order was established in the final decree of divorce which Mother now seeks to modify and the trial court clearly had before it evidence of Father's annual earnings for recent years.

We note that subsection (f) of the regulation addresses those cases where "established orders are reviewed for adjustment." It provides for an increase in the obligor's child support obligation "by an increment not to exceed [10%] per year for each year since the support order was entered or last modified." We find this section equally inapplicable as it, too, pertains to those instances where the obligor has failed to produce any evidence of income so that the court has no reliable evidence on which to base a decision.

When calculating child support awards, chapter 2-4-.03(3)(d) states: "[i]f an obligor is willfully and voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, as evidenced by educational level and/or previous work experience." Although the trial court made no express determination that Father is willfully or voluntarily underemployed, we find the court's decision to necessarily imply such finding. The trial court determined that Father "has the capability of earning $8.50 an hour . . ." and proceeded to set child support based upon Father being employed full-time at this hourly rate. It was Father's testimony that he intends to work only part-time until completion of his pastoral studies and graduation from the seminary. Clearly, the trial court did not base its decision on such part-time employment status. Therefore, we conclude that the trial court implicitly found Father willfully underemployed.

The question then becomes whether the trial court's increase in child support is based on an accurate assessment of Father's "potential income," as evidenced by his level of education and/or prior work experience. Mother asserts that the evidence establishes a much higher earning capacity than $8.50 an hour. The record indicates that at the beginning of the parties' marriage, Father was employed in the trucking business before pursuing a college education in religion. While he possesses a Bachelor of Arts degree, it is not disputed that he has found difficulty obtaining a student pastor position and that until completion of his pastoral studies he cannot seek permanent employment as an ordained minister.

Our review of the trial court's findings of fact is *de novo* upon the record accompanied by a presumption of correctness unless the evidence preponderates otherwise. Rule 13(d) T.R.A.P. We do not find the record to preponderate against the trial court's determination regarding Father's present earning capabilities or "potential income." Father's present employment appears commensurate with his prior work experience based on the record before us. Accordingly, we find that the trial court properly established Father's gross monthly earnings at $1,500.

T.C.A. § 36-5-101(a)(1) provides, in part:

> In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered unless the variants has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed.

The guidelines define a "significant variance" as "at least 15% if the current support is one hundred dollars ($100.00) or greater . . . ." Tenn. Comp. R. & Regs. Title 1240, ch. 2-4-.02(3). Under the present circumstances, a significant variance is clearly shown to exist between the amount currently awarded and that as established under the guidelines for an obligor with earnings or "potential" earnings as that of Father.

We conclude that the trial court's modification of Father's child support obligation

from $300 to $500 was proper.  The judgment is, accordingly, affirmed and this cause remanded for any further necessary proceedings.  Costs are taxed to the appellant, for which execution may issue if necessary.

_____

FARMER, J.

_____

HIGHERS, J. (Concurs)

_____

INMAN, Sr. J. (Concurs)